1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

ASHLEY N. MAESTAS MILNER,

11

Plaintiff,

12

v.

13

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

14

15

Defendant.

16

CASE NO. 3:14-cv-05702 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

17      This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18  Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19  Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States

20  Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 13, 19, 22).

21      After considering and reviewing the record, the Court concludes that the ALJ did

22  not commit harmful legal error in the evaluation of plaintiff's applications. For example,

23  the ALJ relied on inconsistencies between the examining doctor's opinion and her

24

observations during mental status examination and on the fact that plaintiff was not

taking medication that she contended helped her function better for two days prior to the

examination. Similarly, the ALJ relied on plaintiff's inconsistent statements when failing

to credit fully plaintiff's allegations and credibility, and also relied on the ALJ's finding

that plaintiff's "failure to take medication that she acknowledges as helpful prior to her

evaluation indicates that she desired to appear more limited than she functions while

medicated" (AR. 29).

　　　　Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

<u>BACKGROUND</u>

　　　　Plaintiff, ASHLEY N. MAESTAS MILNER, was born in 1985 and was 23 years

old on the alleged date of disability onset of June 30, 2009 (*see* AR. 188-93, 194-97).

Plaintiff has her GED and has taken some college classes (AR. 50). Plaintiff has worked

as a child care worker, sales associate, night audit/housekeeper at a hotel and at fast food

restaurants (AR. 232-43).  Plaintiff's most recent employment ended when she had panic

attacks and did not return to work (AR. 51-56).

　　　　According to the ALJ, plaintiff has at least the severe impairments of "depressive

disorder, NOS; panic disorder without agoraphobia; [and] attention deficit hyperactivity

disorder (ADHD) (20 CFR 404.1520(c) and 416.920(c))" (AR. 25).

　　　　At the time of the hearing, plaintiff was living with her 4-year-old daughter in

subsidized housing.

//

//

1

## PROCEDURAL HISTORY

2

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42

3

U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42

4

U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and

5

following reconsideration (*see* AR. 75-85, 86-96, 99-110, 111-122). Plaintiff's requested

6

hearing was held before Administrative Law Judge Gary Elliott ("the ALJ") on

7

December 12, 2012 (*see* AR. 45-72). On December 19, 2012, the ALJ issued a written

8

decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social

9

10

Security Act (*see* AR. 19-37).

In plaintiff's Opening Brief, plaintiff raises the following issues:  (1) Whether or

11

not the ALJ properly evaluated the medical evidence; (2) Whether or not the ALJ

12

properly evaluated plaintiff's testimony; (3) Whether or not the ALJ properly evaluated

13

the lay evidence; (4) Whether or not the ALJ properly assessed plaintiff's residual

14

functional capacity; and (5) Whether or not the ALJ erred by basing his step four and step

15

five findings on a residual functional capacity assessment that did not include all of

16

17

plaintiff's limitations (*see* Dkt. 13, p. 1).

18

## STANDARD OF REVIEW

19

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

20

denial of social security benefits if the ALJ's findings are based on legal error or not

21

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

22

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

23

1999)).

24

1

<u>DISCUSSION</u>

2

(1)     **Whether or not the ALJ properly evaluated the medical evidence**.

3

Plaintiff contends that the ALJ erred in his evaluation of the medical evidence (*see*

4

Dkt. 13, pp. 2-7). Defendant contends that the ALJ did not err in his evaluation of the

5

medical evidence (*see* Dkt. 19, pp. 9-14).

6

The ALJ is responsible for determining credibility and resolving ambiguities and

7

conflicts in the medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)

8

(*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  If the medical evidence

9

in the record is not conclusive, sole responsibility for resolving conflicting testimony and

10

questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th

11

Cir. 1982) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing*

12

*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

13

14

Plaintiff contends that the ALJ improperly rejected the medical opinion of

15

examining doctor, Dr. Melinda Losee, Ph.D. (*see* Dkt. 13, pp. 3-5). Defendant contends

16

that the ALJ provided specific and legitimate reasons for failing to credit fully her

17

opinions (*see* Dkt. 19, pp. 9-12).

18

When an opinion from an examining doctor is contradicted by other medical

19

opinions, the examining doctor's opinion can be rejected only "for specific and legitimate

20

reasons that are supported by substantial evidence in the record."  *Lester v. Chater*, 81

21

F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.

22

1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Here, the Court concludes

23

24

that the ALJ provided specific and legitimate reasons for failing to credit fully the opinions of Dr. Losee.

Dr. Losee examined plaintiff on May 19, 2011 (AR. 418-23). As noted by the ALJ, Dr. Losee opined that plaintiff suffered from various functional limitations, such as her opinion that plaintiff "appears to suffer from impaired concentration that can affect her ability to understand, remember and carry out instructions on a sustained basis" (AR. 31 (*citing* AR. 421)). Dr. Losee also opined that plaintiff has difficulty responding appropriately to supervision, coworkers and the public, and would likely have some difficulty handling normal pressures and changes in a work setting (*id.*). She also opined that plaintiff appeared to suffer from chronic dysphoric mood, primarily irritability and anger that affects plaintiff's interpersonal and vocational functioning (AR. 421). Dr. Losee further opined that plaintiff lacks motivation and has poor impulse control (*id.*).

The ALJ failed to credit fully the opinions of Dr. Losee for a number of reasons (*see* AR. 31). First, the ALJ noted that while performing her mental status examination, Dr. Losee observed that plaintiff's "concentration during the evaluation []was not significantly impaired" (AR. 31 (*citing* AR. 420)). However, when providing her assessment of plaintiff's limitations, Dr. Losee opined that plaintiff "appears to suffer from impaired concentration that can affect her ability to understand, remember and carry out instructions on a sustained basis" (AR. 31 (*citing* AR. 421)). These findings by the ALJ are based on the record and provide substantial evidence in support of the ALJ's finding that "Dr. Losee's opinion is inconsistent with her own findings and not well supported" (AR. 31). These findings from the record also substantiate the ALJ's finding

1  that Dr. Losee's opinion "is based on the claimant's subjective complaints" (*id.*). In Dr.

2  Losee's report, she noted that plaintiff "reported having impaired concentration since

3  childhood" (AR. 420). As Dr. Losee observed during her examination that plaintiff's

4  concentration was not significantly impaired, but provided a functional assessment that

5  included impaired concentration, the Court concludes that the ALJ's inference that Dr.

6  Losee provided her functional assessment based on plaintiff's self report is based on

7  substantial evidence in the record as a whole. As the ALJ found that plaintiff is not fully

8  credible with respect to her allegations of functional limitations, a finding that the Court

9  upholds here, *see infra*, the Court concludes that this reasoning entails a specific and

10  legitimate reason for failing to credit fully Dr. Losee's opinions regarding plaintiff's

11  functional limitations.

12

13       The ALJ also noted that Dr. Losee examination of plaintiff "took place when the

14  claimant had not taken Adderall for two days, and the claimant reported to Dr. Losee that

15  Adderall helped immensely" (AR. 31 (*citing* AR. 418-19)).  The record substantiates

16  these findings by the ALJ. Dr. Lossee's report includes the indication that plaintiff was

17  taking Adderall for ADHD "and feels that it helps 'immensely'" (AR. 418-19). Dr. Losee

18  further reported that plaintiff "feels that it helped her to focus better at work and helped

19  with her 'people problems' . . . . [and] that it helps her to 'think straight and clearly'"

20  (AR. 419). The ALJ's implication that the evaluation by Dr. Losee represented an

21  overstatement of plaintiff's limitations as it occurred when plaintiff was not taking

22  medication that plaintiff indicated helped her to function better, is an implication that is

23  based on substantial evidence in the record as a whole. As relevant for the ALJ's

24

assessment of plaintiff's credibility, *see infra*, section 2, the Court also notes that these facts support the ALJ's finding that plaintiff's "failure to take medication that she acknowledges as helpful prior to her evaluation indicates that she desired to appear more limited than she functions while medicated" (AR. 29).

For the reasons stated, the Court concludes that the ALJ provided specific and legitimate reasons based on substantial evidence in the record as a whole for failing to credit fully the opinion of Dr. Losee.

Plaintiff also contends that the ALJ erred by failing to discuss some evidence that allegedly supports plaintiff's testimony (*see* Dkt. 13, pp. 5-6). The medical evidence presented in support of this argument consists of diagnoses by various health care providers and some reports of plaintiff's symptoms (*see id.*). Plaintiff contends that this evidence "support[s] [plaintiff's] testimony about her symptoms and limitations, and shows that she has impairments which can reasonably to cause [sic] all of her symptoms and limitations" (*id.* at p. 6). However, the fact that this evidence provides some support for plaintiff's allegations does not demonstrate any error on the part of the ALJ. The ALJ only errs by failing to discuss significant, probative evidence; and plaintiff has not argued nor demonstrated that such is the case regarding any of the enumerate evidence. *See Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))) (the Commissioner "may not reject 'significant probative evidence' without explanation").

1    Finally, plaintiff contends that the ALJ erred in the evaluation of the opinions of

2    non-examining psychologist, Dr. Paula Kresser, Ph.D. (Dkt. 13, pp. 6-7). Plaintiff

3    acknowledges that the ALJ noted various opinions of Dr. Kresser, but contends that the

4    ALJ erred by failing to include further limitations in plaintiff's residual functional

5    capacity ("RFC") based on some of Dr. Kresser's opinions regarding moderate

6    limitations (*see id.*). However, the ALJ gave "great weight" to Dr. Kresser's opinion (AR.

7    31). Furthermore, the Court finds persuasive defendant's argument that the checklist

8    plaintiff refers to "is not the residual functional capacity assessment" (*see* Dkt. 19, p. 13).

9    As noted by defendant, according to the internal operating manual of the Administration,

10   it is "expressly stated [that] 'the actual mental residual functional capacity assessment is

11   recorded in the narrative discussion(s) in the explanation text boxes'" (*id.* (*citing* AR. 81,

12   POMS DI 25020.010 at B)).

13

14   Indeed, according to the internal operating manual of the Administration, the

15   purpose of the summary conclusions in section 1 is to ensure that the evaluator

16   considered each of the relevant mental activities, as well as any limitations on these

17   activities over a normal workweek, but that it "**is the narrative** written by the

18   psychiatrist or psychologist **in section III** ("Functional Capacity Assessment" )  .  .  .  .

19   **that adjudicators are to use as the assessment of RFC**." *See* Program Operations

20   Manual System (POMS), DI 25020.010(B)(1), 2001 WL 1933437, available at

21   https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010, last visited August 13, 2015

22   (emphasis in original).

23

24

Furthermore, according to the Ninth Circuit, an ALJ does not reject necessarily findings by a medical consultant that a claimant had moderate mental functional difficulties if the ALJ credits the consultant's narrative opinion and includes the concrete limitations opined. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-75 (9th Cir. 2008)). The Ninth Circuit Court found no error in the situation presented in *Stubbs-Danielson*, in which a claimant had complained that a moderate limitation as to pace was not accommodated into the RFC, because the ALJ in *Stubbs-Danielson* had included the consultant's opinion from the narrative portion of a limitation to simple tasks into the RFC. *See Stubbs-Danielson, supra,* 539 F.3d at 1173-74.

Here, the ALJ gave great weight to the narrative written by Dr. Kresser and included the opinions from Dr. Kresser's narrative into the ALJ's RFC for plaintiff (*see* AR. 27). In the narrative section, Dr. Kresser opined that plaintiff "is capable of performing [short repetitive tasks] and some complex task[s] in at least 2 hr intervals throughout an 8 hr day on a sustained basis" (AR. 93) and that plaintiff "is capable of accepting instructions from a supervisor as she was cooperative in exams [and] [plaintiff] cannot interact with the public due to anxiety & aggressive behavior [but] can work with a few co-workers on an occasional basis" (AR. 94). In his RFC for plaintiff, the ALJ found that plaintiff is "limited to simple, routine tasks and instructions or unskilled work; she can have no public contact; [and] she can have occasional coworker contact with no teamwork" (AR. 27).

Plaintiff also argues that the ALJ erred by crediting Dr. Kresser's opinion that plaintiff could accept instructions from supervisors based on the fact that plaintiff was

cooperative in exams. Plaintiff provides an alternative interpretation of the evidence, suggesting that plaintiff "lost her last job after having a panic attack during a confrontation with her boss," therefore demonstrating that she cannot accept instructions from supervisors (*see* Dkt. 13, p. 7; *but see* AR. 418 ("During a confrontation with her boss [] [], she suffered a panic attack and quit")). However, the ALJ's decision to credit the reviewing doctor's opinion that plaintiff could accept instructions from supervisors because she was cooperative during examinations is based on substantial evidence in the record. It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan, supra,* 169 F.3d at 599, 601).  Dr. Lossee observed that plaintiff "was cooperative with the demands of the evaluation; [] made good eye contact with the examiner and was able to relate appropriately [] with answers to questions [that] were thoughtful and nondefensive" (AR. 20). Dr. Losee noted that plaintiff "was not observed to be excessively fidgety or hyperactive" (*id.*). Although plaintiff complains that the ALJ did not adopt Dr. Losee's opinion regarding plaintiff's limitations regarding responding appropriately to supervisors, the Court already has upheld the ALJ's failure to credit fully Dr. Losee's opinions, *see supra*. Therefore, the Court does not find plaintiff's arguments regarding Dr. Kresser's opinions persuasive, and concludes that the ALJ did not err in evaluating Dr. Kresser's opinions.

1    Based on the reasons stated and the record as a whole, the Court concludes that the

2    ALJ did not err in the evaluation of the medical evidence.

3        (2)    **Whether or not the ALJ properly evaluated plaintiff's testimony**.

4    Plaintiff contends that the ALJ erred when evaluating her credibility (*see* Dkt. 13,

5    pp. 8-14). Defendant contends that the ALJ provided clear and convincing reasons for

6    failing to credit fully plaintiff's allegation, including inconsistent statements about

7    substance abuse.

8    If an ALJ rejects the testimony of a claimant once an underlying impairment has

9    been established, the ALJ must support the rejection "by offering specific, clear and

10   convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)

11   (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)); *see also Burrell v. Colvin*,

12   775 F.3d 1133, 1137 (9th Cir. 2014); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

13   1998) (*citing Bunnell v. Sullivan*, *supra*, 947 F.2d at 343, 346-47). As with all of the

14   findings by the ALJ, the specific, clear and convincing reasons also must be supported by

15   substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Bayliss v.*

16   *Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599,

17   601 (9th Cir. 1999)).

18   Here, the ALJ offered numerous reasons for failing to credit fully plaintiff's

19   credibility. The Court already has noted that substantial evidence supports the ALJ's

20   finding that plaintiff 's "failure to take medication that she acknowledges as helpful prior

21   to her evaluation indicates that she desired to appear more limited than she functions

22   while medicated" (AR. 29; *see also supra*, section 1). The Court also concludes that this

is a valid credibility factor relied on by the ALJ (*see id.*). As noted by the Ninth Circuit, the ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ's inference that plaintiff was attempting to appear more functionally limited in her medical examination by failing to take medication that helps her function better for two days prior to the examination is supported by substantial evidence in the record and is an "ordinary technique[] of credibility determination." *See id.* Although plaintiff argues otherwise because Dr. Losee queried whether or not Adderall was an appropriate medication for plaintiff, such does not change the fact that plaintiff felt that Adderall helped with her symptoms, yet she failed to take it for two days prior to her examination appointment.

The ALJ also found that there were "several inconsistencies in the record," including inconsistent statements about alcohol abuse, and an inconsistency between plaintiff's allegations regarding disabling limitations and the objective medical evidence (AR. 30). The ALJ also found that although plaintiff "alleged inability to work from panic attacks and depression, the record indicates significant improvement with medication" (*id.* (*citing* AR. 391, 393, 446)). For example, in June 2010, plaintiff reported that Adderall helped control her anxiety and she voiced "no complaints" (*see* AR. 29 (*citing* AR. 393)).

Regarding inconsistency between plaintiff's allegations and the objective medical evidence, the ALJ noted that although plaintiff alleged impaired concentration since

childhood, Dr. Melinda Losee, Ph.D. "reported that the claimant could perform serial 7's and could spell 'world' both forward and backward" (AR. 30 (*citing* AR. 420)). As the Court has noted previously, Dr. Losee observed on examination that plaintiff's concentration "was not significantly impaired" (AR. 420). Similarly, the ALJ noted that although plaintiff "alleged having impaired short-term memory, [] Dr. Losee found that the claimant was able to recall two out of three objects after approximately 5 minutes" (AR. 30 (*citing* AR. 420)). The Court concludes that the ALJ's finding of an inconsistency between plaintiff's allegations of disabling limitations from mental impairments and the objective medical evidence is based on substantial evidence in the record as a whole.

Another inconsistency supporting the ALJ's finding that plaintiff's credibility was "undermined by several inconsistencies in the record" (AR. 30) includes plaintiff's inconsistent statements regarding her alcohol abuse. As noted by the ALJ, when plaintiff admitted herself for psychological treatment at E.U. Luther Hospital in late November, 2009, she "alleged that she had been 'sober for three years,'" however in September, 2009, "two months earlier, she had admitted to drinking as many as 10 beers a night for up to three days a week" (AR. 26 (*citing* AR. 287, 319)). Although plaintiff contends that the ALJ did not rely on this reason when failing to credit fully plaintiff's allegation, the Court notes that when discussing plaintiff's credibility, the ALJ clearly indicated that he found that her credibility was "undermined by several inconsistencies in the record" (AR. 30). As the ALJ indicated specifically that plaintiff's credibility is undermined by inconsistencies in the record and as the ALJ previously in his written decision had

pointed out the inconsistency regarding plaintiff's drinking, the Court is not persuaded by plaintiff's argument.

Based on the record as a whole, the Court concludes that the ALJ provided specific, clear and convincing reasons for failing to credit fully plaintiff's credibility that are based on substantial evidence in the record as a whole.

Even if the Court were to find that some of the reasons provided by the ALJ for failing to credit fully plaintiff's credibility are erroneous, any error would be harmless error. The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* (citations omitted). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). Courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)). As the ALJ has provided valid, clear and convincing reasons

for failing to credit fully plaintiff's credibility, the Court concludes that any error in the analysis of plaintiff's credibility is harmless error.

Although plaintiff also contends that the new evidence submitted to the Appeals Council supports plaintiff's testimony, plaintiff does not direct the Court to any new evidence that demonstrates that the ALJ's determination regarding plaintiff's credibility is not based on substantial evidence in the record as a whole. The Court has considered the new evidence and concludes that it does not demonstrate that the ALJ's decision is not supported by substantial evidence in the record as a whole. *See Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ provided clear and convincing reasons based on substantial evidence for failing to credit fully plaintiff's allegations.

(3)     **Whether or not the ALJ properly evaluated the lay evidence**.

Plaintiff contends that the ALJ erred by failing to credit fully the testimony from lay witnesses (*see* Dkt. 13, pp. 15). The ALJ failed to credit fully the testimony of the lay witnesses based on findings that their statements were inconsistent with the overall record, "including evidence of the claimant caring for her daughter, working in several different jobs since her alleged onset date, and demonstrating significant improvement with medication" (*see* AR. 30). Plaintiff does not explain why the reasons provided by the ALJ were not germane.

An ALJ may disregard opinion evidence provided by both types of "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons

1   germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217,

2   1224 (9th Cir. 2010) (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also*

3   *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Here, the ALJ found that the

4   lay witness testimony was inconsistent with other evidence of record (*see* AR. 30).

5       The first lay witness, Ms. Teresa Kelly, was plaintiff's supervisor at Jack-in-the-

6   Box (AR. 60). Ms. Kelly testified that she would give a lot of extra attention to plaintiff,

7   and "mommy" her, and that this caused jealousy among plaintiff and her coworkers (*see*

8   AR. 61-62). However, Ms. Kelly opined that at a different job plaintiff's boss probably

9   would not provide this extra attention, thereby eliminating this potential for conflict with

10  coworkers (*see* AR. 62). Ms. Kelly testified that plaintiff was a good worker when she

11  was there and that she was adequate in dealing with customers (AR. 60-61). Ms. Kelly

12  also testified that she worked with plaintiff on her attendance and that plaintiff "needed a

13  little more help than someone else that was more efficient and just came to work and did

14  their job" (AR. 61-62).

15

16      The ALJ found that the statements of Ms. Kelly were largely credible, but that

17  they were "inconsistent with the overall record, including evidence of the claimant caring

18  for her daughter, working in several different jobs since her alleged onset date, and

19  demonstrating significant improvement in medication" (AR. 30). This reasoning is

20  germane. For example, although Ms. Kelly testified that she helped plaintiff with her

21  attendance issues, the ALJ discussed previously in the written decision how plaintiff was

22  able to engage in substantial gainful activity after her alleged onset date, including

23  between June 2009 and December 2009, and from April 2010 through December 2010

24

ORDER ON PLAINTIFF'S COMPLAINT - 16

(AR. 24-25). As noted by defendant, "in December 2009, treatment notes document that she quit her job at Walmart to return to school" (*see* Dkt. 19 (*citing* AR. 309)). This treatment note documents that plaintiff voluntarily quit her job because she planned on going back to school full time, and not that she lost her job due to any attendance issues (*see id.*). Therefore, the Court concludes that substantial evidence in the record supports the ALJ's finding that the indication from Ms. Kelly that plaintiff had limitations with respect to attendance was inconsistent with other evidence in the record, such as plaintiff's work record. The Court also notes that plaintiff's August 2011 treatment record indicates that plaintiff was having difficulties finding a work schedule that fit with her plans to attend school and her child care responsibilities; she did not indicate an inability to work due to attendance issues related to mental health limitations (*see* AR. 486). In addition, although the testimony of Ms. Kelly suggests that plaintiff's difficulties with coworkers were due to circumstances that probably would not exist at another job, the ALJ nevertheless included limitations in plaintiff's RFC to only "occasional coworker contact with no teamwork" (AR. 27).

The ALJ also found an inconsistency between the testimony of Ms. Kelly and plaintiff's ability to care for her daughter as well as plaintiff's demonstrated significant improvement with medication (AR. 30). Multiple times throughout the written decision, the ALJ noted how plaintiff was capable of caring for her four-year-old daughter (*see* AR. 28, 30 (*citing* AR. 421)). The Court already has noted plaintiff's improvement with Adderall medication, and when plaintiff voiced "no complaints," *see supra*.

1    For the reasons stated, and based on the record as a whole, the Court concludes

2    that the ALJ provided germane rationale for failing to credit fully the lay witness

3    testimony from Ms. Kelly.

4    Lay testimony also was provided by Mr. Christopher Scott Milner (*see* AR. 65-

5    68). Mr. Milner testified that plaintiff "does very well" with raising her child and that she

6    is "a very loving mother" (AR. 65). Mr. Milner also testified that he observed plaintiff's

7    "stress concerning other areas in her life," and that he "would only assume maybe that []

8    would be a result in employment area as well" (*see id.*). He testified that with respect to

9    problems that she might have in the workplace that this stress was "the only thing I could

10    say for sure" (*see id.*). Following further questioning, Mr. Milner testified that plaintiff

11    also had debilitating panic attacks and had difficulties leaving the house (*see* AR. 66-67).

12

13    The ALJ provided the same rationale for failing to credit fully the testimony from

14    Mr. Milner as he did for the testimony of Ms. Kelly, in that he found that his statements

15    were "inconsistent with the overall record, including evidence of the claimant caring for

16    her daughter, working in several different job since her alleged onset date, and

17    demonstrating significant improvement with medication" (AR. 30). The Court concludes

18    that this reasoning is germane.

19    The ALJ's finding that the testimony regarding a potential need for limitations

20    with respect to stress is inconsistent with plaintiff's ability to care for her four-year-old

21    child and to work at several different jobs is based on substantial evidence in the record

22    as a whole. In addition, the ALJ's finding that this testimony is inconsistent with

23    plaintiff's significant improvement in medication also is based on substantial evidence in

24

the record as a whole, including plaintiff's indication in June 2010 that Adderall helps control her anxiety and that she voiced no complaints, and her indication in September 2010, that Zoloft was working to help control her anxiety (AR. 29 (*citing* AR. 393, 397)). Similarly, the ALJ's finding that Mr. Milner's testimony regarding panic attacks and an inability to leave the house due to anxiety is inconsistent with the medical evidence documenting significant improvement with medication to control anxiety is based on substantial evidence in the record as a whole.

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ did not commit any harmful legal error with respect to the lay evidence.

    (4)    **Whether or not the ALJ properly assessed plaintiff's residual functional capacity ("RFC").**

Plaintiff does not provide any new arguments support her contention that the ALJ erred when assessing her RFC, but instead, reiterates the arguments the Court already has discussed. As the Court has found these arguments unpersuasive, the Court concludes that the ALJ did not err in evaluating plaintiff's RFC.

Similarly, plaintiff does not present any new arguments regarding the contention that the ALJ erred by basing his step four and step five findings on a RFC assessment that did not include all of plaintiff's limitations. The Court finds no error.

<u>CONCLUSION</u>

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

1    **JUDGMENT** should be for defendant and the case should be closed.

2    Dated this 26th day of August, 2015.

3

4    _____
     J. Richard Creatura
5    United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24